George Nicholas, Plaintiff, appeals pro se the trial court's judgment in favor of Robert Lowrey, dba Brownies Independent Transmission Shop, on Nicholas' Consumer Sales Practices Act claims. Having found no error in the trial court's decision, we affirm the judgment of the trial court.
 I.
This action has its basis in Nicholas' wife dropping their car off at Brownie's on June 29, 1994, to repair a transmission leak. Mrs. Nicholas claims that she told Brownie's manager on duty that day, Mr. Warden, that she wanted the minimum repair required to keep the cost down on the car. During their initial face-to-face contact, Mr. Warden gave Mrs. Nicholas a repair order form. Mrs. Nicholas placed her husband's name along with their address and phone number on the form. Mrs. Nicholas did not choose one of the options on the form in the choice of estimate box, which informs the consumer that he or she is entitled to an estimate and asks the consumer to mark their preference as to the form of the estimate, that is, written, oral, or no estimate. Nor did Brownie's request that Mrs. Nicholas mark her preference as to the estimate. The Ohio Administrative Code requires that automotive repair shops include the choice of estimate box in their repair order forms.
Mr. Warden informed Mrs. Nicholas that he could not give her an estimate at that time because he would have to inspect the car first. Furthermore, Mr. Warden told Mrs. Nicholas that he would call her with an estimate, and Mrs. Warden agreed. Mrs. Nicholas left without a copy of the repair estimate form. After inspecting the car, Mr. Warden called Mrs. Nicholas at home to inform her that he found metal chips in the transmission, and that he would have to open up the transmission to determine the extent of damage that had occurred. Warden explained that Brownie's charged a flat fee of $225.00 for the removal, opening, inspection, and reinstallation of the transmission, but that charge would be credited against the ultimate cost of the transmission repairs. Mrs. Nicholas assented to those terms over the phone.
The following day, the Nicholas' took a trip to Arkansas. On July 1, 1994, Nicholas phoned Brownie's from Tennessee, and Warden gave him an oral estimate of $854.00 to repair his car's transmission. Nicholas told Warden that he could not afford to spend that much money and that he only wanted absolutely essential repairs to be performed. Mr. Nicholas asked Mr. Warden to itemize his estimate, which Mr. Warden did over the phone. After itemizing the repair estimate, Mr. Warden informed Nicholas that he could reduce the cost of the repair by around two hundred dollars by not replacing the torque converter. At the end of the conversation, Nicholas agreed to the repairs with the exception of the replacement of the torque converter. Nicholas also asked Warden to save and return to him all of the transmission parts that he replaced.
The Nicholas' returned to Brownie's on July 7, 1994, to retrieve their car along with the replaced parts. When they arrived, they were informed that Warden was on vacation. When Nicholas asked for the replaced parts, he was told by an employee that none of the parts were saved. The employee also mentioned that two other employees had worked on his car. After Nicholas insisted that he told Warden to save the parts, another employee went into the shop and found a few small parts inside of a dirty rag, and gave those parts to Nicholas. Afterward, Nicholas paid the bill and took the car.
On July 12, 1994, when Warden allegedly returned from his vacation, Brownie's called Nicholas to inform him that the remainder of the replaced parts had been found. Nicholas retrieved the parts on July 16, 1994. With the addition of those parts, Brownie's had tendered a total amount of seventeen parts to Nicholas.
Nicholas was concerned that Brownies' had charged him for work that was not performed on his car. Thus, Nicholas wrote a letter to Brownies' owner, Robert Lowery, and requested that four hundred and three dollars of the six hundred and sixty-three dollars Nicholas paid be returned to him because Brownies' had not itemized the parts replaced nor provided him with of the parts that Brownies' allegedly replaced. Mr. Lowrey refused Nicholas' request.
As a consequence, Nicholas filed a complaint in small claims court against Brownies', alleging Consumer Sales Practices Act violations. Brownies' moved to transfer the case to the general civil docket of the municipal court, which the trial court granted. A referee heard the matter and submitted a Referee's Report and Recommendation on December 15, 1994, finding in favor of Brownies'. Nicholas filed objections to the Referee's Report and Recommendation on December 30, 1994. After considering Nicholas' objections, the trial court adopted the Referee's Report and Recommendation on March 26, 1995.
Thereafter, Nicholas appealed the trial court's decision. On appeal, this court remanded the cause of action to the trial court because the trial court had failed to specifically address Nicholas' objections to the Referee's Report and Recommendation. On June 24, 1997, the trial court entered a second judgment entry in which the court specifically addressed Nicholas' objections to the Referee's Report and Recommendation. Nicholas now brings this timely appeal of that decision.
 I.
In his first assignment of error, Nicholas argues that:
 THE TRIAL COURT ERRED WHEN IT PERMITTED THE CASE TO BE TRANSFERRED FROM THE SMALL CLAIMS COURT TO THE REGULAR DOCKET OF MUNICIPAL COURT.
Nicholas argues that the Municipal court erred in granting Brownie's motion for transfer of the case from the small claims to the regular civil docket of the Municipal court. Nicholas claims that the court's grant of Brownie's motion to transfer was erroneous because Brownies did not have a valid defense. More specifically, Nicholas argues that Brownies did not in fact have a valid defense to Nicholas' allegations that Brownies violated the Consumer Sales Practices Act.
We are unpersuaded by Nicholas' assigned error. R.C. 1925.10
governs the transfer of cases from small claims court to the general civil docket of the Municipal court. That section provides, in pertinent part, that in a court's discretion
 "a case duly entered on the docket of the small claims division may be transferred to the regular docket of the court upon a motion of a party against whom a claim, counterclaim, or cross-claim is instituted or upon the motion of a third-party defendant. A motion filed under this division shall be accompanied by an affidavit stating that a good defense to the claim exists, setting forth the grounds of the defense, and setting forth compliance of the party or third-party defendant with any terms fixed by the court."
R.C. 1925.10(B). Although R.C. 1925.10 requires that the defendant assert in an affidavit that it has a good defense and that the defendant set forth the grounds of its defense in the affidavit, it does not require as a prerequisite to the transfer of the case that the court to determine the validity of the defendant's assertions. Rather, the court is entitled to rely on the defendant's attestation that it has a good defense to the action.
In the present case, Brownies complied with the requirements of R.C. 1925.10. In Brownies' motion to transfer the case, Brownies averred that it had several good defenses to Nicholas' claims as well as set forth the grounds of those defenses. At that point, the court did not need to inquire into the validity of Brownies' defenses. Instead, taking the sworn assertions of Brownies' defenses as true, the court within its discretion was permitted to transfer the case to the Municipal court's general civil docket. Hence, we cannot conclude that the trial court abused its discretion by not subjecting Brownies' claimed defenses to further scrutiny. Nicholas' first assignment of error is overruled.
 III.
In his second assignment of error, Nicholas argues that:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY RULING IN FAVOR OF BROWNIE'S BASED UPON MR. NICHOLAS' SINGLE REFERENCE TO INADMISSIBLE EVIDENCE.
Nicholas asserts that the trial court not only adopted the reasoning in the Referee's Report as the basis of its decision to rule in favor of Brownie's but also included independent grounds for its decision. Nicholas claims that one of its independent grounds for its decision was that Nicholas referred to evidence that was properly excluded at trial in his objections to the Referee's Report. Nicholas claims that it was unjust and unreasonable for the trial court to dismiss all of his objections based upon one minor reference to inadmissible evidence. On this basis, Nicholas requests that this court find that the trial court's decision was erroneous.
We again are unpersuaded by Nicholas' request. The trial court did not rule in favor of Brownie's because Nicholas mentioned inadmissible evidence in his objections to the Referee's Report. Rather, the court merely noted that it could not consider some of the evidence that Nicholas presented in his objections because the evidence was properly excluded by the Referee as inadmissible. In view of this, we overrule Nicholas' second assignment of error.
 IV.
In his third assignment of error, Nicholas argues that:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY RULING IN FAVOR OF BROWNIE'S BASED ON MR. NICHOLAS' FAILURE TO PROVIDE AN EXPERT WITNESS.
The trial court stated in its judgment entry that "Plaintiff failed to provide any expert testimony that the repairs made by Defendant were not necessary to repair the transmission leak or that replacement of parts was not necessary." Nicholas argues that he was not required to provide expert testimony to establish those claims because, he maintains, that the burden is not on the plaintiff to prove those claims. He argues that, instead, violations of the Consumer Sales Practices Act are per se deceptive.
We disagree with Nicholas' contention that he did not bear the burden of proving that unnecessary repairs were made. Nicholas alleged several violations of the Consumer Sales Practices Act, including, violations of 109:4-3-13(C)(8) and (9). Those paragraphs provide that it shall be a deceptive act or practice for a supplier to:
 (8) Represent that repairs or services are necessary when such is not the fact; [or to]
 (9) Represent that repairs have been made or services have been performed when such is not the fact * * *.
Ohio Adm. Code 109:4-3-13(C)(8) and (9). Although knowingly doing either of the above actions is a per se violation of the Consumer Sales Practices Act, it is incumbent upon the plaintiff to prove that the defendant did in fact make either of those representations.
Turning to the present case, we determine that the trial court correctly placed the burden upon Nicholas to prove by a preponderance of the evidence that Brownie's misrepresented that services or repairs were necessary or that services or repairs were performed. To prove either of these Consumer Sales Practices Act violations, Nicholas would have had to present some proof that Brownie's misrepresented that services or repairs were necessary or that services or repairs were performed. It is clear from the record and transcripts that Nicholas has no personal knowledge of what repairs were necessary or what repairs were in fact made. Nicholas only suspected that Brownie's misrepresented that repairs were necessary and that repairs were performed because he found that some of Brownie's representations were dubious.
Unfortunately, Nicholas, who proceeded pro se, was unaware that he needed to present expert testimony to substantiate his suspicions and to authenticate and explain his evidence of Brownie's deceptive practices. Without this evidence, the court was only left with Nicholas' suspicions that Brownie's misrepresented that repairs were necessary and that repairs were made. And Nicholas' suspicions alone were clearly insufficient for a finding in his favor. Thus, we must agree with the trial court that Nicholas needed, but failed to provide the court with, expert testimony on this issue. This assignment of error is overruled.
 V.
In his third assignment of error, Nicholas argues that:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO FIND THAT VIOLATIONS OF THE OHIO ADM. CODE ARE PER S.E. DECEPTIVE.
Under this assignment of error, Nicholas argues that violations of the Consumer Sales Practices Act are per se deceptive. In other words, Nicholas asserts that proof of intent to deceive is not required to establish a violation of R.C.1345.02. Nicholas argues that to require such proof would be contrary to the purposes of the Consumer Sales Practices Act which is to eliminate the need for proof of deceptive intent as is required in a common law fraud action.
After reviewing the trial court's decision, we cannot find that the trial court required Nicholas to prove that Brownie's had an intent to deceive. Instead, it is clear that the trial court required Nicholas to prove that Brownie's committed one of the acts, which if proven, would amount to a per se violation of the Consumer Sales Practices Act. It is apparent from the transcript that Nicholas failed to prove that Brownie's committed one of the acts which constitute a per se violation under the Consumer Sales Practices Act. Hence, we cannot find that the trial court committed error on this basis. Accordingly, we overrule his fourth assignment of error.
 VI.
Nicholas argues in his fifth assignment or error that:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO PROPERLY ADDRESS THE OHIO ADM. CODE 109:4-3-13
(A)(1) REGARDING THE CHOICE OF ESTIMATE DURING THE INITIAL FACE TO FACE CONTACT.
Nicholas argues that Brownie's violated Ohio Adm. Code Section 109:4-3-13 (A)(1) of the Ohio Administrative Code, which provides that it shall be
 "a deceptive act or practice in connection with a consumer transaction involving the performance of either repairs or any service upon a motor vehicle * * * [for] a supplier to:
 (1) Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, to provide the consumer with a form which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated cost of the repair or service. The form shall also clearly and conspicuously contain the following disclosures in substantially the following language:
 ESTIMATE YOU HAVE THE RIGHT TO AN ESTIMATE IF THE EXPECTED COST OF REPAIRS OR SERVICES WILL BE MORE THAN TWENTY-FIVE DOLLARS. INITIAL YOUR CHOICE:
__________ written estimate
__________ oral estimate
__________ no estimate."
Ohio Adm. Code 109:4-3-13 (A)(1).
Nicholas asserts that although Brownie's gave his wife the above-quoted form, Brownie's did not ask his wife to fill out her choice of estimate. Nicholas claims that it is a violation of this section of the Consumer Sales Practices Act for a supplier to not require the consumer to mark his or her choice as to the form of the estimate. Nicholas further asserts that because Brownie's did not require his wife to mark her choice of estimate, Brownie's violated this portion of the Consumer Sales Practices Act.
We disagree with Nicholas' contention. The language of the Consumer Sales Practices Act only requires that the supplier give the consumer a form conspicuously containing the above-quoted language. The Act does not mandate that the supplier require the consumer to fill out his or her choice of estimate. And Brownie's did satisfy the provisions of the Act by providing Mrs. Nicholas with a form which conspicuously contained that language.
Furthermore, at the time that Mrs. Nicholas dropped off the car, Brownie's informed her that they would be unable to provide her with an estimate until one of its mechanics looked at the car. Brownie's further informed Mrs. Nicholas that they would call her with an estimate, and Mrs. Nicholas agreed. Finally, Brownie's did indeed call Mrs. Nicholas with an estimate. Based upon a plain reading of the regulation and the facts of this case, we cannot find that the trial court committed an error in finding that Brownie's had complied with this regulation. Nicholas' fifth assignment of error is overruled.
 VII.
In his sixth assignment of error, Nicholas argues that:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO FIND THAT APPELLEE VIOLATED OHIO ADM. CODE 109:4-3-13(C)(13) WHICH REQUIRED BROWNIE'S TO TENDER ALL REPLACED PARTS TO APPELLANT.
Nicholas claims that Brownie's failed to tender all replaced parts as required by Section 109:4-3-13 of the Ohio Administrative Code, which states in pertinent part that:
 (C) In any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to:
* * *
 (13) Fail to tender to the consumer any replaced parts unless the parts are to be rebuilt or sold by the supplier, or returned to the manufacturer in connection with warranted repairs or services, and such intended reuse or return is made known to the consumer prior to commencing any repair or service * * *
Ohio Adm. Code 109:4-3-13 (C)(13). Nicholas bases his contention that Brownies' did not tender all of the parts which were allegedly replaced upon Mr. Warden's testimony that it would take about ten pages to list every seal, clutch, and little part that are used in the rebuilding of a transmission. Nicholas argues that Mr. Warden's testimony proves that Brownie's did not tender all of the replaced parts because Brownie's only provided him with seventeen parts, which surely would not take ten pages to list.
After reviewing the entire record and transcripts, we cannot find that Nicholas proved that Brownie's failed to tender all of the parts. Mr. Warden testified that all of the parts that he charged him for were tendered to Nicholas. Moreover, Nicholas did not contradict Mr. Warden's testimony with expert testimony on whether more parts should have been tendered. Furthermore, Mr. Warden testified that some minute pieces were destroyed when he replaced them, and Nicholas did not present any expert testimony to refute Mr. Warden's assertion. Without expert testimony, Nicholas' suspicion that Brownies' failed to tender all of the allegedly replaced parts clearly was insufficient to support a finding in his favor. The assignment of error is overruled.
 VIII.
In his seventh assignment of error, Nicholas maintains that:
 THE TRIAL COURT ERRED WHEN IT FAILED TO FIND THAT APPELLEE VIOLATED THE OHIO ADM. CODE 109:4-3-13(C)(12) WHICH REQUIRED BROWNIE'S TO PROPERLY ITEMIZE THE LIST OF REPAIRS AND IDENTIFY THE MECHANIC(S).
Nicholas first asserts that Brownie's failed to provide him with an itemized list of repairs performed, services rendered, and parts and materials used. Ohio Administrative Code Section109:4-3-13(C)(12) provides, in pertinent part, that:
 "(C) In any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to:
* * *
 (12) Fail to provide the consumer with an itemized list of repairs performed or services rendered, including a list of parts or materials and a statement of whether they are used, remanufactured or rebuilt, if not new, and the cost thereof to the consumer, the amount charged for labor, and the identity of the individual performing the repair or service."
Ohio Adm. Code 109:4-3-13(C)(12).
Nicholas argues that the trial court erred in finding that Brownie's bill and "subsequent agreement" satisfied this regulation. Nicholas claims that Brownies' bill lumps together all of the parts in the category of reseal and rebearing. Nicholas further argues that although prior to the bill and the commencement of repairs, Brownie's in a phone conversation with Nicholas more specifically itemized the necessary parts and the costs of those parts, Brownie's needed to provide him with this information in his bill.
We disagree with Nicholas' contention. We find that Brownie's itemization over the phone together with the itemization in the bill were sufficient to satisfy the above-quoted regulation. The regulation does not specify that this information be written or require that this information be included in the final bill. Rather, the regulation merely requires that the consumer be provided with this information. In this case, Nicholas was unquestionably provided with an itemization of the parts replaced.
Next, Nicholas argues that Brownie's did not comply with this regulation because Brownie's failed to identify the other mechanics that worked on the motor vehicle. We are unconvinced by Nicholas' claim. Nicholas by his own admission was informed that Mr. Warden was performing the repairs on his automobile. When Nicholas picked up his motor vehicle, however, Mr. Warden was on vacation and one of Brownies' employees told Nicholas that two other individuals had performed work on his automobile. Nicholas claims that he does not know the identity of those individuals. Notwithstanding Nicholas' claim, Nicholas admitted in his direct testimony that the employee informed him of the identity of the two individuals who performed the work. Thus, even if Mr. Warden did not perform all of the work on his automobile, Nicholas was informed of the identity of the other individuals who did perform the other work. This assignment of error is overruled.
 IX.
Nicholas' last four assignments of error are as follows:
 APPELLANT IS ENTITLED TO TREBLE THE AMOUNT PAID BUT NOT PROPERLY ITEMIZED.
 BROWNIE'S VIOLATED THREE SEPARATE PROVISIONS OF THE C.P.S.A. THEREFORE THE APPELLANT SHOULD BE AWARDED $200 OR TREBLE DAMAGES FOR EACH VIOLATION.
 BROWNIE'S ACTED "KNOWINGLY" THEREFORE ATTORNEY FEES SHOULD BE AWARDED TO APPELLANT.
 ATTORNEY FEES PURSUANT TO FEE SHIFTING STATUTE R.C. 1345.09 MUST BE AWARDED TO THE PREVAILING PARTY, EVEN WHEN THAT PARTY IS A PRO S.E. LITIGANT.
All of these assignments of error relate to Nicholas' request that he be awarded damages and attorney's fees. We determine that we need not address these assignments of error because we find that the trial court properly ruled in favor of Brownie's, and, as a consequence, Nicholas is not entitled to either damages or attorney's fees. These assignments of error are overruled and the judgment of the trial court is affirmed.
WOLFF, J. and GRADY, J., concur.
Copies mailed to:
George Nicholas
R. Daniel Sykes
Hon. Catherine M. Barber